# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINE HARRIS, | Civil No. 3:16-cv-923 |
| Plaintiff | (Judge Mariani) |
| v. | |
| IAN TARRGOT, et al., | |
| Defendants | |

FILED
SCRANTON
AUG 22 2018
PER_____
DEPUTY CLERK

## MEMORANDUM

I. **Background**

Plaintiff Antoine Harris ("Harris"), an inmate who, at all relevant times, was housed at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), commenced the instant civil rights action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). Named as Defendants are Unit Manager Taggart,[2] Sergeant Bloomfield, and Corrections Officer Heiner.[3] (*Id.*). Harris alleges that he informed Defendants Bloomfield and Heiner that he suffered from a medical condition and should be assigned to a bottom bunk on the bottom tier. (*Id.* at pp. 1-2). Harris claims that Defendants failed to move him to a bottom bunk on the bottom tier and, as a result, he aggravated his preexisting ankle injury. (*Id.*).

---

[1] Harris is currently confined at the State Correctional Institution, Benner Township, in Bellefonte, Pennsylvania.

[2] Incorrectly identified in the complaint as Tarrgot and Taggort.

[3] Incorrectly identified in the complaint as Heiman.

Presently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 37). The motion is ripe for resolution and, for the reasons set forth below, the Court will grant the motion for summary judgment.

## II. <u>Summary Judgment Standard of Review</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. <u>Statement of Undisputed Facts</u>

Defendant Ian Taggart is a Unit Manager at SCI Camp-Hill. (Doc. 39, Statement of

3

Material Facts, ¶ 2; Doc. 40-5, Declaration of Ian W. Taggart ("Taggart Decl.") ¶ 1; Doc. 43, Counterstatement of Material Facts, ¶ 2). Defendant Bloomfield is a Sergeant at SCI-Camp Hill. (Doc. 39 ¶ 3; Doc. 1 ¶ 5; Doc. 43 ¶ 3). Defendant Heiman is a Corrections Officer at SCI-Camp Hill. (Doc. 39 ¶ 4; Doc. 1 ¶ 6; Doc. 43 ¶ 4). Prior to his incarceration, Harris was involved in a motorcycle accident that required a metal plate and screws to be surgically implanted in his left ankle. (Doc. 39 ¶ 5; Doc. 40-3, pp. 11-12, Deposition of Antoine Harris ("Harris Depo."); Doc. 43 ¶ 5).

On November 2, 2015, Harris entered SCI-Camp Hill and was housed on Block R in a cell on the top tier and in a top bunk. (Doc. 39 ¶¶ 6, 7; Taggart Decl. ¶¶ 3, 7; Doc. 40-5, Attach. A, Inmate Cell History; Doc. 43 ¶¶ 6, 7). On November 9, 2015, Harris was moved to Block I, and assigned a cell in the top tier and a top bunk. (Doc. 39 ¶ 8; Doc. 1 ¶¶ 7, 8; Doc. 43 ¶ 8). On November 9, 2015, Harris informed Defendants Bloomfield and Heiner that he should be assigned to a bottom tier, bottom bunk because of his preexisting ankle injury. (Doc. 39 ¶ 9; Doc. 1 ¶ 9; Doc. 43 ¶ 9). Defendants contend that there was no notation on the official prison documentation for inmates being moved on November 9, 2015 that Harris should be assigned a special tier or bunk status. (Doc. 39 ¶ 10; Taggart Decl. ¶ 4). Defendants further contend that, as of November 9, 2015, there was no special tier or bunk status noted in Harris' institutional file. (Doc. 39 ¶ 11; Taggart Decl. ¶ 5; Doc. 40-5, Attach. B, Inmate Status Tracking). In response, Harris asserts that he informed

4

Defendants about his medical condition verbally and in writing. (Doc. 43 ¶¶ 10, 11).

On November 11, 2015, Harris' institutional file was updated to reflect that he was recommended to be assigned a cell on the bottom tier, bottom bunk. (Doc. 39 ¶ 12; Doc. 40-5, Attach. B, Inmate Status Tracking; Doc. 43 ¶ 12). Medical staff did not notify Defendants as to the update in Harris' cell recommendation. (Doc. 39 ¶ 13; Taggart Decl. ¶ 6; Doc. 43 ¶ 13). Defendants contend that Harris did not present documentation from the medical department evidencing his cell recommendation to be bottom tier, bottom bunk. (Doc. 39 ¶ 14 Taggart Decl. ¶ 7). Harris contends that he again informed Defendants about his medical condition verbally and in writing. (Doc. 43 ¶¶ 14, 15).

On November 18, 2015, Defendant Taggart checked Harris' institutional file and discovered the cell recommendation update. (Doc. 39 ¶ 15; Taggart Decl. ¶ 8). On November 18, 2015, Harris was moved to a cell on the bottom tier and assigned a bottom bunk. (Doc. 39 ¶ 16; Taggart Decl. ¶ 9; Doc. 43 ¶ 16).

Department of Corrections Inmate Grievance Policy ("DC-ADM 804") contains specific requirements for the inmate grievance process. (Doc. 39 ¶ 17; Doc. 40-4, Declaration of Michael "Skip" Bell ("Bell Decl.") ¶ 2; Doc. 40-4, Attach. A; Doc. 43 ¶ 17). DC-ADM 804 requires an inmate to receive a response from the Facility Manager before appealing to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 39 ¶ 18; Bell Decl. ¶ 10; Doc. 40-4, Attach. A, Section 2B, ¶ 1(a); Doc. 43 ¶ 18). DC-ADM 804

requires the following documents to be provided in an appeal to the SOIGA: a legible copy of the initial grievance; the initial review response; a legible copy of the appeal to the Facility Manager; and the Facility Manager's response. (Doc. 39 ¶ 19; Bell Decl. ¶ 11; Doc. 40-4, Attach. A, Section 2B, ¶1(j)). DC-ADM 804 does not allow inmates to provide handwritten copies of the Initial Review Response or the Facility Manager's response. (Doc. 39 ¶ 20; Bell Decl. ¶ 11; Doc. 40-4, Attach. A, Section 2B, ¶ 1(j)). Harris contends that he used a DOC Inmate Grievance Policy (DC-ADM 804) that was dated 2010, and this previous version of DC-ADM 804 did not state that inmates may not handwrite their responses. (Doc. 43 ¶ 19, 20).

On November 12, 2015, Harris filed grievance number 597896 wherein he stated he informed Defendants Bloomfield and Heiner of his cell requirements, but they failed to move him. (Doc. 39 ¶ 21; Doc. 40-4, p. 49, Attach. D, Grievance Number 597896; Doc. 43 ¶ 21). On November 20, 2015, Unit Manager Taggart denied the grievance, stating that as of the date Harris was moved to Block I, nothing in his official prison documentation reflected that he should be on a bottom tier, bottom bunk. (Doc. 39 ¶ 22; Doc. 40-4, p. 50). Defendant Taggart further noted that Harris' status was updated on November 11, 2015 and upon discovery of the update on November 18, 2015, he was moved to a cell on the bottom tier, bottom bunk. (Doc. 39 ¶ 22; Doc. 40-4, p. 50; Doc. 43 ¶ 22).

On December 1, 2015, Harris appealed the denial of his grievance to the Facility

Manager. (Doc. 39 ¶ 23; Doc. 40-4, p. 51; Doc. 43 ¶ 23). On January 12, 2016, prior to receiving the Facility Manager's response, Harris appealed to SOIGA. (Doc. 39 ¶ 24; Doc. 40-4). Harris did not include any documentation required by DC-ADM 804. (Doc. 39 ¶ 25; Doc. 40-4, p. 45, Attach B). On January 13, 2016, the Facility Manager upheld the denial of the grievance. (Doc. 39 ¶ 26; Doc. 40-4, p. 52, Attach. D; Doc. 43 ¶ 26).

On January 20, 2016, the SOIGA sent Harris a courtesy notice that he did not include any required documentation and he must submit an amended appeal with the appropriate documents, or the appeal may be dismissed. (Doc. 39 ¶ 27; Bell Decl. ¶ 16; Doc. 40-4, p. 47, Attach. C). On February 19, 2016, the SOIGA received Harris' amended appeal, which was dated February 10, 2016. (Doc. 39 ¶ 28; Bell Decl. ¶ 17; Doc. 40-4, Attach. D, p. 49; Doc. 43 ¶¶ 24, 29, 30). The amended appeal contained a handwritten copy of the Facility Manager's response. (Doc. 39 ¶ 29; Bell Decl. ¶ 19). The amended appeal was received more than fifteen days after the date of the Facility Manager's response. (Doc. 39 ¶ 30; Bell Decl. ¶ 20). On February 22, 2016, the SOIGA dismissed the appeal because it was untimely and included a handwritten copy, in contravention of DC-ADM 804. (Doc. 39 ¶ 31; Bell Decl. ¶ 21; Doc. 40-4, p. 55, Attach. E). Harris contends that his appeal to the SOIGA dated February 10, 2016 was timely. (Doc. 43 ¶ 31).

IV. <u>Discussion</u>

Defendants seek an entry of judgment in their favor on the following grounds: (1)

Harris failed to properly exhaust his administrative remedies with respect to the claims in the complaint, (2) Harris failed to establish that Defendants were deliberately indifferent to his health or safety, and (3) Defendants are protected by qualified immunity. (Doc. 38). The Court will address these arguments seriatim.

### A. Exhaustion of Administrative Review

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, see Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance

8

process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Id. at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 Pa. Code § 93.9(a); see also www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. DC-ADM 804 provides inmates with a three-tiered process for filing grievances and appeals to grievance responses. Id. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. Id. This must occur within fifteen days after the events upon which the claims are based. Id. "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). If the inmate was dissatisfied with the initial response to his grievance, the inmate may then file

an appeal to the Facility Manager in writing, within fifteen (15) working days from the date of the initial review response. *Id.* An inmate who remained dissatisfied with the decision of the Facility Manager may then appeal to final review with the Chief of the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days from the date of the Facility Manager's decision. *Id.* An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001)) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, No. 06-5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov.21, 2007) (finding administrative remedies unavailable where

10

prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, *see Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, *see Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers). The Third Circuit has found that an institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

On November 12, 2015, Harris filed grievance number 597896, wherein he alleged that he informed Defendants Heiner and Bloomfield that he should be assigned to bottom tier, bottom bunk, but they failed to move him. (Doc. 40-4, pp. 45). On November 20, 2015, Unit Manager Taggart denied the grievance, stating that as of the date Harris was moved to Block I, nothing in his official prison documentation reflected that he was to be on a bottom

tier, bottom bunk. (Doc. 39 ¶ 22; Doc. 40-4, p. 50). Defendant Taggart further noted that Harris' status was updated on November 11, 2015. (*Id.*). Upon discovery of the update on November 18, 2015, Harris was moved to a cell on the bottom tier, bottom bunk. (*Id.*).

On December 1, 2015, Harris appealed to the Facility Manager. (Doc. 39 ¶ 23; Doc. 40-4, p. 51). On January 12, 2016, prior to receiving the Facility Manager's response, Harris appealed to SOIGA. (Doc. 39 ¶ 24; Doc. 40-4, p. 45). Harris did not include any documentation required by DC-ADM 804. (Doc. 39 ¶ 25; Doc. 1, p. 6). On January 13, 2016, the Facility Manager upheld the denial of the grievance. (Doc. 39 ¶ 26; Doc. 40-4, p. 52, Attach. D).

On January 19, 2016, the SOIGA received Harris' appeal, dated January 12, 2016. (Bell Decl. ¶ 15; Doc. 40-4, p. 45). On January 20, 2016, the SOIGA advised Harris that he did not include any required documentation and he must submit an amended appeal. (Doc. 39 ¶ 27; Bell Decl. ¶ 16; Doc. 40-4, p. 47, Attach. C). On February 10, 2016, Harris filed an amended appeal, which the SOIGA received on February 19, 2016. (Doc. 39 ¶ 28; Bell Decl. ¶ 17; Doc. 40-4, p. 53). On February 22, 2016, the SOIGA dismissed the appeal because it was untimely and because Harried failed to provide the required documentation for proper review. (Doc. 39 ¶ 31; Bell Decl. ¶ 21; Doc. 40-4, p. 55, Attach. E).

Pursuant to DC-ADM 804, an inmate must wait for the appeal decision from the Facility Manager before appealing to SOIGA. (Doc. 40-4, p. 26). DC-ADM 804 explicitly

states that "[t]he decision from the appeal to the Facility Manager/designee must be received by the inmate before an appeal to Final Review can be sought." (Doc. 40-4, p. 26, DC-ADM 804, Section 2B, ¶ 1(a)). Here, Harris' appeal to the SOIGA was dated January 12, 2016, the day before the Facility Manager's issued his decision, which was dated January 13, 2016. Thus, the record reflects that Harris failed to follow the procedures required by DC-ADM 804.

Assuming that Harris waited to receive the Facility Manager's response before he filed an appeal to the SOIGA, he nonetheless failed to comply with the grievance procedure by failing to submit the requisite documentation with both his appeal and amended appeal. Harris also failed to submit his appeal in a timely fashion. Pursuant to DC-ADM 804, an appeal to the SOIGA must be filed within fifteen (15) working days from the date of the Facility Manager's decision. Harris' appeal to the SOIGA was dated February 10, 2016, nineteen (19) days after the date of the Facility Manager's response. Consequently, his appeal was untimely. Therefore, on February 22, 2016, the SOIGA dismissed Harris' appeal because it submitted past the fifteen (15) day deadline, and because he failed to include the required documentation for proper review. Harris cannot escape the fact that his grievance was determined to be untimely and improper in the final administrative stage.

Harris fails to set forth any claims that prison officials obstructed his attempt to exhaust the administrative remedy process. Nor does he present any facts or evidence that

his efforts to utilize the administrative review process were impeded in any manner. To the extent that Harris argues that the grievances rules and procedures regarding exhaustion were confusing or not described with particularity, and that he utilized an outdated DOC policy, the Court finds these arguments unavailing. *See, e.g., Casey v. Smith*, 71 F. App'x 916, 918 (3d Cir. 2003) (an allegation that the DOC policies were not clearly explained to the inmate, alone, does not excuse the inmate from properly exhausting his administrative remedies).

The record reflects that Harris failed to comply with DC-ADM 804 by filing an appeal to the SOIGA before he received the Facility Manager's response, failing to attach the appropriate documents to his appeal, and failing to file the appeal in a timely manner. Thus, Harris failed to properly exhaust his administrative remedies. Consequently, Defendants are entitled to an entry of judgment in their favor based on Harris' failure to substantially comply with the exhaustion requirements. Nevertheless, for the reasons set forth below, the Court finds that Harris failed to state a plausible claim for relief.

### B. Deliberate Indifference Claim

Defendants argue that Harris fails to establish that they acted with the requisite deliberate indifference to his health or safety. (Doc. 38, pp. 19-22).

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all deficiencies and

inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.*

The record reflects that Harris was transferred to SCI-Camp Hill on November 2, 2015, and was assigned to a top bunk on the top tier. (Taggart Decl. ¶ 3; Doc. 40-5, p. 7). On November 9, 2015, Harris was transferred from Block I to Block R. (Taggart Decl. ¶ 3). The documentation for Harris' move from Block I to Block R did not note his bunk status, and the medical sheet did not note his bunk status as of November 9, 2015. (Taggart Decl. ¶ 4, 5; Doc. 40-5, p. 9). Based on the lack of documentation indicating that Harris should be assigned on the bottom tier with a bottom bunk, he was randomly assigned a cell.

The evidence further indicates that on November 11, 2015, Harris' prison records were updated to reflect a cell recommendation for a bottom tier with a bottom bunk. (Taggart Decl. ¶ 8, Doc. 40-5). The record reflects that medical staff at SCI-Camp Hill did

15

not inform Defendants as to the update, nor did they provide Harris with a medical slip indicating the change in status. (Taggart Decl. ¶¶ 6, 7). On November 18, 2015, Defendant Taggart checked the prison records and discovered the update. (Taggart Decl. ¶ 8). Harris was therefore moved to a bottom bunk on the bottom tier on that same day, November 18, 2015.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Harris failed to meet his burden with respect to his deliberate indifference claim. There is no record evidence that suggests that any Defendant knew that Harris faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it, or that they had any reason to know that he faced any substantial harm. Harris' contention that Defendants should have known about his bottom bunk status because they had access to his medical history through the prison's computer system does not set forth a deliberate indifference claim under the Eighth Amendment. Harris was only temporarily assigned to a top tier, top bunk from November 2, 2015 to November 18, 2015. Moreover,

the evidence establishes that Harris' cell assignment recommendation was not updated until November 11, 2015, and he was moved seven (7) days later on November 18, 2015. On the very day that Defendant Taggart discovered the bottom tier, bottom bunk status, Harris was moved to the appropriate cell. Such action, at most, more aptly sounds in negligence, which is not tantamount to deliberate indifference. See *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (deliberate indifference under the Eighth Amendment "entails something more than mere negligence"); *Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) ("Even if Burley did have a 'serious medical need,' he failed to show that officials were anything more than negligent by keeping him in a top bunk for five days."); *Goodson v. Willard Drug Treatment Campus*, 615 F.Supp.2d 100, 102 (W.D.N.Y. 2009) (holding that prisoner's temporary assignment to top bunk did not violate Eighth Amendment due to his alleged medical needs); *Johnson v. Sinkston*, Civ. No 04-0707, 2006 WL 752991 (S.D.Ala. Mar.22, 2006) (holding that defendants were not deliberately indifferent in failing to assign the plaintiff to a bottom bunk). Consequently, Defendants' motion for summary judgment will be granted as none of the Defendants acted with deliberate indifference to Harris' health or safety.

C. **Qualified Immunity**

Defendants invoke the defense of qualified immunity in their summary judgment motion. (Doc. 38, pp. 22-23). "The doctrine of qualified immunity protects government

17

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as

to whether a constitutional or federal right has been violated, Defendants are protected by qualified immunity.

## V. Conclusion

Based on the foregoing, Defendants' motion (Doc. 37) for summary will be granted. A separate Order shall issue.

Date: August 22, 2018

Robert D. Mariani
United States District Judge